IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHARON L. MYRICK, DDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-92C |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR
JUDGMENT UPON ADMINISTRATIVE RECORD

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Assistant Director

DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Lisa M. Flynn
Assistant Regional Counsel
Office of General Counsel, Region X
Department of Health and Human Services
2201 Sixth Avenue, Suite 902
Seattle, WA 98121-1833

June 24, 2008

## MOTION

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests that the Court grant the United States judgment upon the administrative record. In support of our motion, we rely upon the following brief.

## BRIEF

## STATEMENT OF THE ISSUE

Was the board's decision to deny plaintiff disability retirement and severance benefits arbitrary and capricious when plaintiff incurred and received treatment for the disability prior to her active duty service and concealed it from the agency upon enlistment?

## STATEMENT OF THE CASE

Lieutenant Commander Sharon L. Myrick, DDS (a.k.a. Sharon L. Carter) ("Dr. Myrick") served in the Commissioned Corps of the United States Public Health Service ("PHS") from October 1985 to July 1988, from November 1996 to October 1998, and from April 2005 to January 2008. Am. Compl. ¶ 8. Dr. Myrick has Multiple Sclerosis ("MS"). Id. at ¶¶ 4-6, 11-14 & attach. 1. The PHS medical review board found, and the medical appeal board affirmed, that Dr. Myrick is unfit for duty and should be discharged without benefits. Id. at ¶¶ 5-6 & attach. 2-3. Dr. Myrick asserts claims for disability retirement or severance benefits. Id. at ¶¶ 16-17.

## STATEMENT OF FACTS

In November 2000, Dr. Myrick experienced "slurred speech" and sought medical treatment. AR 64-65 (Nov. 27, 2000 Medical Report).[1] According to the medical report, an MRI of Dr. Myrick showed "edematous spots in her brain." Id. The preliminary diagnosis was "dysarthria, most likely secondary to multiple sclerosis, based on symptoms and MRI findings."

[1] We refer to the administrative record, filed June 11, 2008, as "AR [Page No.]."

Id. Dr. Myrick was diagnosed with MS in November 2000 and began taking Avonex to treat the condition in late 2000 or early 2001.[2] AR 23, AR 29, Tr. 23:15-18, Tr. 29:17-25 (Dec. 6, 2007 testimony of Dr. Myrick that she was diagnosed with MS in 2000, began taking Avonex "in 2000," and "remained on that therapy until last July [2006]."); AR 115 (Aug. 28, 2007 Ltr. from Dr. Uskavitch) ("Avonex … 30 mcg/wk" prescribed "since 01/01 → 8/07").

In October 2004, Dr. Myrick applied to re-enlist in the PHS and completed a report of her medical history, which states "I am in good health." AR 53-54, 59 (Oct. 16, 2004 Report of Medical History). Dr. Myrick also answered "no" to the following question: "have you ever had or do you now have … neurological problems." Id. (response to § 15(h)). At the time she completed this form, Dr. Myrick "knew" that she "had M.S." and was taking Avonex "off and on." AR 22, AR 30, Tr. 22:12-21, Tr. 30:5-8 (Dec. 6, 2007 testimony of Dr. Myrick).

Dr. Myrick's symptoms deteriorated in early 2007. E.g., AR 87 (March 13, 2007 medical report noting "extremity numbness" and "acute demyelination"); AR 159 (March 26, 2007 doctor's letter). Dr. Myrick requested a medical retirement in May 2007, stating: "I am very sad that I have to inform you that my doctor has advised me that my health will no longer permit me

---

[2] According to the National Multiple Sclerosis Society's website, "MS … is a chronic, often disabling disease that attacks the central nervous system (CNS), which is made up of the brain, spinal cord, and optic nerves." About MS, http://www.nationalmssociety.org/about-multiple-sclerosis/what-is-ms/index.aspx. "Symptoms may be mild, such as numbness in the limbs, or severe, such as paralysis or loss of vision." Id. "The progress, severity, and specific symptoms of MS are unpredictable and vary from one person to another." Id. "Approximately 85% of people are initially diagnosed with relapsing-remitting MS." Id. "People with this type of MS experience clearly defined attacks of worsening neurologic function." Id. "These attacks—which are called relapses, flare-ups, or exacerbations —are followed by partial or complete recovery periods (remissions), during which no disease progression occurs." Id. "Avonex is approved by the U.S. Food and Drug Administration (FDA) for the treatment of patients with relapsing forms of MS to slow the accumulation of physical disability and decrease the frequency of clinical exacerbations." About MS, http://www.nationalmssociety.org/about-multiple sclerosis/treatments/medications/interferon-beta-1a-avonex/index.aspx. "Patients with MS in whom efficacy has been demonstrated include those who have experienced a first clinical episode and have MRI features consistent with MS." Id.

to keep up a full-time job. I have had to take a considerable amount of sick time, and had hoped that things would get better. … I can no longer keep up the standard of work that my position requires." AR 152 (May 30, 2007 E-mail from Dr. Myrick); AR 166 (same).

The PHS medical review board ("MRB" or "medical board") convened in September 2007. AR 102 (Sept. 27, 2007 MRB Report). The medical board "reviewed all pertinent past medical records and [Dr. Myrick's] statement and determined that [she] is considered unfit for duty" and "unable to perform the duties of her rank, category, and billet." Id. The PHS medical board recommended Dr. Myrick for separation without benefits for three independent reasons. Id. First, the medical board found that "the onset of the condition of Multiple Sclerosis was prior to her call to active duty." Id. Second, the medical board found that Dr. Myrick did not disclose her MS "as is required at the time of her application and call to active duty" and "withheld information which would have established the preexistence of the disabling condition." Id. Third, the medical board found that "[t]his pre-existing condition was not aggravated by her service and her exacerbation [of symptoms] was considered to be a natural progression of her disease." Id. The medical board concluded that the "disabling condition of Multiple Sclerosis is not service related." Id. Dr. Myrick appealed the medical board's decision.

The PHS medical appeals board ("MAB" or "appeals board") conducted a hearing in December 2007. AR 1-36 (Dec. 6, 2007 transcript). Dr. Myrick testified that she was diagnosed with MS in 2000, that she began taking Avonex "in 2000," and that she "remained on that therapy until last July [2006]." AR 23, AR 29, Tr. 23:15-18, Tr. 29:17-25 (Dec. 6, 2007 testimony of Dr. Myrick). Dr. Myrick, nevertheless, testified that she did not disclose MS on the report of her medical history because "I did not have any symptoms" and "felt kind of that maybe this was not really true." AR 22-23, AR 26, Tr. 22:22-23:14, 26:8-13 (same). Dr. Myrick

also testified that she did not educate herself about MS after her diagnosis because "I didn't want it to kind of get into my head that this is what this is." AR 23-24, Tr. 23:19-24:13.

The appeals board "reviewed all pertinent medical records and [Dr. Myrick's] statement, as well as the testimony of [Dr. Myrick] in response to questions from her attorneys and Board members." AR 51-52 (Dec. 6, 2007 MAB decision); Compl. attach. 2 (same). The appeals board "fully agreed with the findings of the Medical Review Board" and "found that [Dr. Myrick] is not fit for duty because she is unable to perform the duties of her rank, category, and billet." Id. The appeals board "recommended that [Dr. Myrick] be separated without benefits since the onset of the condition of Multiple Sclerosis was prior to her call to active duty and she was receiving significant therapy for this condition prior to entering the Corps." Id. The appeals board found that Dr. Myrick "did not disclose this serious condition or therapy, as is required, at the time of her application to the Corps" and "withheld information from the Corps which would have established the preexistence of the disabling condition." Id. The appeals board found "that her service did not aggravate her pre-existing condition and the exacerbation that she was experiencing in 2007 was considered to be a natural progression or part of the natural history for her disease" and her "disabling condition was not service related." Id.

The Acting Surgeon General concurred with appeals board's decision on January 2, 2008. Id. The PHS discharged Dr. Myrick in January 2008. Am. Compl. ¶ 6; Compl. attach.3.

## STANDARD OF REVIEW

Rule 52.1 provides that any party "may move for partial or other judgment on the administrative record filed with the court." RCFC 52.1(b). "Summary judgment standards are not pertinent to judicial review upon an administrative record." RCFC 52.1 rules committee's note (June 20, 2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1355–57 (Fed. Cir.

2005)). Instead, Rule 52.1 is "designed to provide for trial on a paper record, allowing fact-finding by the trial court." Bannum, 404 F.3d at 1356 (interpreting RCFC 56.1, the predecessor to RCFC 52.1). Thus, the Court "is required to make factual findings … from the record evidence as if it were conducting a trial on the record." Id. at 1357; accord Martinez v. United States, 77 Fed. Cl. 318, 324 (2007), aff'd, 260 F. App'x. 298 (Fed. Cir. 2008).

"The standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases." RCFC 52.1 rules committee's note. In military benefits cases, "the controlling precedents entitle a discharged service member to judicial review on the merits of the question of eligibility for disability retirement pay." Fisher v. United States, 402 F.3d 1167, 1180 (Fed. Cir. 2005). "The cases are consistent that this review is conducted under a deferential standard of review, essentially the standard under which administrative agency decisions are reviewed: whether the decision is arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." Id.

The service member must prove, "by cogent and clearly convincing evidence," that the agency's disability "determination was arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citations omitted). The Court's review is "limited to the administrative record before the deciding official or officials." Wyatt v. United States, 23 Cl. Ct. 314, 319 (1991) (citing Long v. United States, 12 Cl. Ct. 174, 177 (1987)); Martinez v. United States, 77 Fed. Cl. at 324 (quoting Wyatt).

## ARGUMENT

### I. DR. MYRICK IS NOT ENTITLED TO THE BENEFITS CLAIMED BECAUSE SHE DID NOT INCUR MULTIPLE SCLEROSIS WHILE SERVING ON ACTIVE DUTY

The benefits of PHS officers are controlled by statute because, like other federal employees, they "derive the benefits and emoluments of their positions from appointment rather

than from any contractual or quasi-contractual relationship with the government." Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985); accord Schism v. United States, 316 F.3d 1259, 1274-75 (Fed. Cir. 2002) (en banc) ("Federal employees, both military and civilian, serve by appointment, not contract, and their rights to … benefits must be determined by reference to the statute and regulations governing these benefits rather than to ordinary contract principles"); see also 42 U.S.C. § 204 (discussing appointment of PHS officers). Title 42, United States Code, provides that PHS officers are entitled to many of the same benefits as Army officers. 42 U.S.C. § 213a. In particular, PHS officers "are entitled to all the rights, benefits, privileges, and immunities now or hereafter provided for commissioned officers of the Army … under … title 10, United States Code, … Chapter 61, Retirement or Separation for Physical Disability [10 USCS §§ 1201 et seq.]" 42 U.S.C. § 213a(a)(2). Sections 1201 and 1203 of title 10 apply to service members, like Dr. Myrick, who are "entitled to basic pay" prior to their discharge from active duty because of a physical disability.[3] See 10 U.S.C. §§ 1201(c)(1).

Section 1201 provides that, upon a determination that a member is unfit for duty "because of physical disability incurred while entitled to basic pay …, the Secretary may retire the member, with retired pay computed under section 1401 of this title [10 USCS § 1401], if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)." 10 U.S.C. § 1201(a) (emphasis supplied). Section 1203 similarly provides that, upon a determination that a member is unfit for duty "because of physical disability incurred while entitled to basic pay …, the member may be separated from the member's armed force, with severance pay computed under section 1212 of this title [10 USCS § 1212], if the

[3] In contrast, service members who are discharged from the reserves because of a physical disability are entitled to disability retirement and severance benefits as provided by sections 1204 and 1206. See 10 U.S.C. §§ 1204, 1206. These provisions are not relevant in this case.

Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)." 10 U.S.C. § 1203(a) (same). Thus, a common requirement for disability retirement benefits under section 1201, and for severance benefits under section 1203, is that the disability must be "incurred while entitled to basic pay." 10 U.S.C. §§ 1201(a), 1203(a).

Dr. Myrick is not entitled to disability retirement pursuant to section 1201, or to severance benefits pursuant to section 1203, because her unfitting condition, MS, was not "incurred while entitled to basic pay." See id. The PHS medical review board found, and the PHS medical appeal board affirmed, that Dr. Myrick was diagnosed with MS and was receiving significant therapy for this condition prior to re-enlisting in the Corps. AR 102 (Sept. 27, 2007 MRB Report); AR 51-52 (Dec. 6, 2007 MAB decision); Compl. attach. 2 (same). This finding is supported by substantial evidence. Dr. Myrick's medical records and her testimony reflect that she was diagnosed with MS in November 2000 and began taking Avonex to treat the condition in late 2000 or early 2001. AR 23, AR 29, Tr. 23:15-18, Tr. 29:17-25 (Dec. 6, 2007 testimony of Dr. Myrick before medical appeals board that she was diagnosed with MS in 2000, that she began taking Avonex "in 2000," and that she "remained on that therapy until last July [2006]."); AR 115 (Aug. 28, 2007 Ltr. from Dr. Uskavitch) ("Avonex … 30 mcg/wk" prescribed for Dr. Myrick "since 01/01 → 8/07"). Dr. Myrick admits that she left the Corps in 1998 and did not re-enlist until 2005. Am. Compl. ¶ 8. Dr. Myrick was not "entitled to basic pay" when she incurred MS in 2000 and, thus, she is not entitled to disability retirement pursuant to section 1201 or severance benefits pursuant to section 1203. See 10 U.S.C. §§ 1201, 1203.

Dr. Myrick, nevertheless, testified before the PHS medical appeals board that she "did not have any symptoms" in 2004, that she successfully participated in the President's Physical Fitness Challenge after she re-enlisted in 2005, and that she "felt kind of that maybe this [MS

diagnosis] was not really true." AR 22-23, AR 26-27, Tr. 22:22-23:14, 26:8-13, 27:1-12 (Dec. 6, 2007 testimony of Dr. Myrick before MAB). To the extent that Dr. Myrick may argue there is a genuine dispute of fact as to whether she actually incurred MS in 2000 (prior to her re-enlistment in the Corps, when she was diagnosed with MS and started drug treatment), or in 2007 (when she was on active duty and experienced an exacerbation of MS symptoms), the PHS medical appeals board properly exercised its discretion to credit the medical diagnosis, rather than Dr. Myrick's apparent disbelief. See Rebosky v. United States, 60 Fed. Cl. 305, 311 (2004) ("when there is evidence both supporting the agency decision and evidence supporting the plaintiff's position, this court must defer to the agency.") (citing Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983) ("the standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence")).

The agency's finding that Dr. Myrick incurred MS prior to her active duty service is supported by substantial evidence. This finding, standing alone, negates any claim by Dr. Myrick for disability retirement or severance benefits. Accordingly, the Court should grant our motion for judgment upon the administrative record.

## II. DR. MYRICK IS EQUITABLY ESTOPPED TO CLAIM BENEFITS FOR A PRE-EXISTING DISABILITY THAT SHE CONCEALED FROM THE PHS

Dr. Myrick's disability retirement and severance claims also fail because she concealed her MS from the Corps when she applied for re-enlistment in 2004. These circumstances support an equitable estoppel defense to Dr. Myrick's claims and, therefore, the PHS medical appeals board properly rejected her benefits claims for this additional reason.

"It has long been a standing principle in this court that the conduct and admissions of a party operate against him in the nature of an estoppel when the other party detrimentally relies upon that conduct or those admissions." Weir v. United States, 474 F.2d 617, 622, 200 Ct. Cl.

501, 510 (1973); Colon v. United States, 71 Fed. Cl. 471, 483 (2006) (citations omitted), aff'd sub nom., Acevedo v. United States, 216 F. App'x 977 (Fed. Cir. 2007). "The elements of equitable estoppel are (1) misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted."[4] Lincoln Logs, Ltd. v. Lincoln Pre-Cut Log Homes, Inc., 971 F.2d 732, 734 (Fed. Cir. 1992); Colon, 71 Fed. Cl. at 483 (citations omitted).

In Colon, a service member on inactive duty re-enlisted in the Army, but failed to disclose his prior history of a serious condition (post-traumatic stress syndrome) and related drug treatment when he completed the "Report of Medical History" form. 71 Fed. Cl. at 484-85. The Court stated that Mr. Colon's failure to provide a complete medical history and his concealment of a medical condition and related drug treatment is "problematic." Id. The Court concluded that the Army was entitled to "reasonably rel[y] in part on Mr. Colon's statements and omissions regarding his medical condition in reaching its determination to reenlist him at that time." Id. at 484. The Court affirmed the agency's denial of Mr. Colon's application for disability retirement benefits. Id. at 485. The Court did not rule upon the Government's equitable estoppel defense, however, because the agency had relied upon an Army regulation to the same effect. Id. at 484.

In this case, as noted, Dr. Myrick was diagnosed with MS in November 2000 and began taking Avonex to treat the condition in late 2000 or early 2001. AR 23, AR 29, Tr. 23:15-18, Tr. 29:17-25 (Dec. 6, 2007 testimony of Dr. Myrick before MAB); AR 115 (Aug. 28, 2007 Ltr. from

[4] An alternative formulation describes estoppel asserted against the Government: (1) the Government must know the true facts; (2) the Government must intend that its conduct be acted upon or must so act that the contractor has a right to believe it so intended; (3) the contractor must be ignorant of the true facts; and (4) the contractor must rely on the Government's conduct to his injury. JANA, Inc. v. United States, 936 F.2d 1265, 1270 (Fed. Cir. 1991) (citing Emeco Indus., Inc. v. United States, 485 F.2d 652, 657, 202 Ct. Cl. 1006 (Ct. Cl. 1973)).

Dr. Uskavitch). In October 2004, Dr. Myrick applied to re-enlist in the PHS and completed the Report of Medical History form, upon which she wrote, "I am in good health." AR 53-54 (Oct. 16, 2004 Report of Medical History). In response to the question, "have you ever had or do you now have … neurological problems," Dr. Myrick answered, "no." Id. (response to § 15(h)). Yet, at the time she completed the medical history form, Dr. Myrick has admitted that she "knew" that she "had M.S." and was taking Avonex "off and on." AR 22, AR 30, Tr. 22:12-21, Tr. 30:5-8 (Dec. 6, 2007 testimony of Dr. Myrick before medical appeals board). Dr. Myrick thus concealed her diagnosis and treatment for MS, which is a serious medical condition with a minimum 30% rating in the VA's disability schedule. 38 C.F.R. § 4.124a (item 8018).

Based upon this substantial evidence, the PHS board "unanimously agreed that [Dr. Myrick] did not disclose this serious condition or therapy, as is required, at the time of her application to the Corps" and "withheld information from the Corps which would have established the preexistence of the disabling condition." AR 51 (Dec. 6, 2007 MAB decision); Compl. attach. 2 (same). Dr. Myrick is estopped to claim disability retirement and severance benefits for the pre-existing condition that she concealed to gain admission to the PHS. See Steuer v. United States, 207 Ct. Cl. 282, 291-92 (1975) ("doctrine of equitable estoppel … is properly invoked" against wrongful discharge claim of plaintiff who gained appointment in Army Medical Corps by means of a misrepresentation that he was a medical doctor).

Finally, we note that PHS regulations provide: "Willfully false statements shall be cause … for dismissal." 42 C.F.R. § 21.23. The PHS did not invoke this regulation and did not discharge Dr. Myrick for making false statements on the Report of Medical History form. Thus, the question of whether Dr. Myrick acted "willfully," or with intent to deceive, is not at issue.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the United States judgment upon the administrative record and deny plaintiff's requests for relief.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Lisa M. Flynn
Assistant Regional Counsel
Office of General Counsel, Region X
Department of Health and Human Services
2201 Sixth Avenue, Suite 902
Seattle, WA 98121-1833

June 24, 2008

CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2008, a copy of foregoing "DEFENDANT'S MOTION FOR JUDGMENT UPON ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick