IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHARON L. MYRICK, DDS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08-92C<br>(Judge Braden) |

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Defendant, the United States, respectfully submits this reply in support of our motion for judgment upon the administrative record (filed June 24, 2008) and response to plaintiff's cross-motion (filed July 24, 2008).[1] Dr. Myrick's counsel filed her cross-motion (Dkt. No. 16) and opposition to our motion (Dkt. No. 17) as separate documents; however, we address them together in this consolidated reply and response brief pursuant to RCFC 7.2(e).

## I. DR. MYRICK HAS NO MEANINGFUL RESPONSE TO OUR SHOWING THAT THE APPEALS BOARD FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

In our opening brief, we demonstrated that substantial evidence – including Dr. Myrick's own testimony and medical records from Dr. Myrick's own doctors – supports the appeals board's findings that (i) Dr. Myrick did not incur Multiple Sclerosis while serving on active duty, (ii) she did not disclose this condition or related therapy when applying to the PHS for duty in 2004, and (iii) she withheld information that would have established the preexisting condition. Def. Mot. 1-4, 7, 9-10 (citing evidence in the AR). In response, Dr. Myrick parrots allegations from the amended complaint, nearly word for word, without any citation to, or discussion of, evidence in the administrative record. Compare Am. Compl. ¶¶ 9-14, with Dkt. No. 17 ¶¶ 3-6, 9;

[1] Defined terms in our opening brief have the same meaning in this brief.

and Am. Compl. ¶¶ 4-14, with Dkt. No. 16 at 2-4. Then, ignoring the medical records and much of her own testimony before the board, Dr. Myrick argues that there was no "legally sufficient evidence." Dkt. No. 16 at 5. Dr. Myrick, however, overlooks the substantial medical evidence in the administrative record that support the appeals board's findings. This evidence is discussed in our opening brief and, rather than repeat that discussion, we incorporate it by reference.

Dr. Myrick also appears to make a belated hearsay objection of sorts, arguing that the PHS was required to present live medical testimony at the hearing, rather than rely upon her medical records. Dkt. No. 17 ¶ 7; Dkt. No. 16 at 5. The Court of Claims has held, however, that "[h]earsay is the staple of the evidence in administrative proceedings, to the point that an agency may disbelieve live medical testimony and credit hearsay medical reports." See McQuown v. United States, 199 Ct. Cl. 858 (1972) (citing Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971)). Indeed, contemporaneous medical records are far more persuasive than after-the-fact testimony. See Montgomery Coca-Cola Bottling Co. v. United States, 615 F.2d 1318, 1327 (Ct. Cl. 1980) ("The subjective intent testimony of the plaintiff can only be seriously considered to the extent it is consistent with the objective evidence."); see also United States v. United States Gypsum Co., 333 U.S. 364, 396 (1947) ("Where such testimony is in conflict with contemporaneous documents we can give it little weight, particularly when the crucial issues involve mixed questions of law and fact.").

Regrettably, "what's past is prologue." Cf. WILLIAM SHAKESPEARE, THE TEMPEST act 2, sc. i, ln. 253. The MS that was diagnosed in 2000 and was treated with drugs for years, prior to Dr. Myrick's active duty service, ultimately rendered her unfit for duty in 2007. She is not entitled to disability retirement or severance benefits for this well-documented preexisting condition that was not incurred while on active duty.

## II. DR. MYRICK'S CONSTITUTIONAL ARGUMENTS ARE WITHOUT MERIT

Dr. Myrick argues that the board's consideration of her medical records, without testimony from her doctors, somehow violated her "right to confront and cross examine her accusers." Dkt. No. 16 at 6; Dkt. No. 17 ¶ 11. During proceedings before the board, Dr. Myrick never disputed the authenticity of her medical records and she never objected to the board's consideration of her medical records. See AR 1-36 (Dec. 6, 2007 transcript). To the contrary, her counsel appears to have moved the board to introduce the medical records into the hearing record. AR 31. Dr. Myrick never called her doctors to testify on her behalf and never objected to the absence of testimony from her doctors at the hearing. Hence, Dr. Myrick has waived the "confrontation" argument. See Metz v. United States, 466 F.3d 991, 998-99 (Fed. Cir. 2006) (arguments not raised before board are waived); Wallace v. Dept. of the Air Force, 879 F.2d 829, 832 (Fed. Cir. 1989) ("Objections to the proceedings of an administrative agency [must] be made while it has an opportunity for correction in order to raise issues reviewable by the courts.").

Even if Dr. Myrick had made her "confrontation" argument before the board, it would have been without merit. Dr. Myrick was not "accused" of anything before the board, nor was she potentially subject to dismissal or to any punitive sanction in that proceeding. She had no constitutional right to "confront" her own doctors in a civil administrative proceeding concerning her claim for disability retirement benefits. See Doe v. United States, 66 Fed. Cl. 165, 176-77 (2005) (Braden, J.) ("In this case, to invoke the Confrontation Clause to compel the testimony of the Psychiatric Resident, Plaintiff would have had to be separated from the service with a 'Dismissal' adjudged as part of a federal criminal conviction from a General Court-Martial. … In this case, Plaintiff was retired with a medical disability. Therefore, the Confrontation Clause did not attach to [medical disability] proceedings before the MEB, IPEB, FPEB, SAFPC, or

AFBCMR"), aff'd, 221 F. App'x 994 (Fed. Cir. 2007) (per curiam); see also Austin v. United States, 509 U.S. 602, 608 n.4 ("the Sixth Amendment's Confrontation Clause does not" apply in civil forfeiture proceedings) (citing United States v. Zucker, 161 U.S. 475, 481 (1896) ("[T]he clause declaring that the accused, in a criminal prosecution, is entitled 'to be confronted with the witnesses against him,' has no reference to any proceeding … which is not directly against a person who is accused, and upon whom a fine or imprisonment, or both, may be imposed.")).

It is unclear whether Dr. Myrick also intends to assert a "due process" argument. Dkt. No. 17 at 3; Dkt. No. 16 at 6. As a threshold matter, the Court does not possess jurisdiction to entertain claims for violations of due process. See McNeil v. United States, 78 Fed. Cl. 211, 236 (2007) (due process claim dismissed for lack of jurisdiction) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir. 1995)); Lowe v. United States, 76 Fed. Cl. 262, 266 (2007) (same, collecting appellate cases). Thus, we assume for purposes of this motion that Dr. Myrick's claim is one for disability retirement benefits upon the theory that the appeals board's decision was invalidated by a due process violation. See Golding v. United States, 48 Fed. Cl. 697, 724 (2001) (holding that court had jurisdiction to consider a claim that a plaintiff's discharge lacked due process where the plaintiff had pled that he was entitled to pay and allowances), aff'd, 47 Fed. Appx. 939 (Fed. Cir. 2002).

"Due process is a function of property and liberty interests." Golding, 48 Fed. Cl. at 725. The Court has explained that the due process rights of military personnel are limited:

> Persons are entitled to due process before they can be deprived of property or liberty. Courts have held that an enlisted member of the armed forces does not have a property interest in his employment because he may be discharged "as prescribed by the Secretary" of his service. However, courts have held that an enlisted member of the armed forces has a liberty interest in his employment. This liberty interest prevents the military from

> discharging a service member without due process - but only in cases where a "stigma" would attach to the discharge.

Golding, 48 Fed. Cl. at 726 (collecting cases); accord Adams v. United States, 391 F.3d 1212, 1225 (Fed. Cir. 2004) ("[W]e conclude that a statutory right to be paid money, at least in the context of federal employee compensation and benefit entitlement statutes, is not a property interest for purposes of the Takings Clause."); Schism v. United States, 316 F.3d 1259, 1268 (Fed. Cir. 2002) ("Benefits for retired military personnel . . . depend upon an exercise of legislative grace, not upon principles of contract, property, or 'takings' law.")

Dr. Myrick has no property interest in continued military service or military benefits. See Adams, 391 F.3d at 1225; Golding, 48 Fed. Cl. at 726 (citing Stone v. Fed. Dep. Ins. Corp., 179 F.3d 1368, 1374 (Fed. Cir. 1999); Doe v. Garrett, 903 F.2d 1455, 1462 (11th Cir. 1990)). Likewise, Dr. Myrick does not allege there is any stigma associated with her honorable discharge, nor could she do so. See Holley v. United States, 124 F.3d 1462, 1469 (Fed. Cir. 1997) (holding that military officer's general discharge under honorable conditions without a hearing did not violate due process considerations); Golding, 48 Fed. Cl. at 724-26 (causes of action alleging that honorable discharge violated Navy regulations and due process dismissed for failure to state a claim). In the absence of a valid property or liberty interest, Dr. Myrick's due process theory fails.

## III. DR. MYRICK CANNOT RELY UPON THE PRESUMPTION OF FITNESS

Dr. Myrick relied upon the presumption of fitness clause in chapter 2 of the Corps' Disability Evaluation Manual during her attorney's closing argument before the board, AR 32-34. It is not clear whether Dr. Myrick implicitly relies upon this presumption when she argues that the PHS did not present sufficient rebuttal evidence. Dkt. No. 17 ¶¶ 7, 9; Dkt. No. 16 at 5. In any event, the presumption of fitness does not apply to Dr. Myrick's condition.

The Disability Evaluation Manual provides, in relevant part:

> B. SERVICE-INCURRED OR -AGGRAVATED. To be eligible for disability benefits, an officer found unfit because of a physical disability must have acquired such disability while on active duty. The disability may be due to a condition incurred on active duty or due to a preexisting condition which was aggravated by service. The presumption is made that an officer was physically fit at the time of his/her call to active duty and any condition incurred or aggravated subsequently is considered service-connected with the following exceptions: …
>
> 2. Abnormalities discovered subsequent to entry on active duty which impel the conclusion that they must have existed or have originated before the individual entered PHS. As a matter of policy, any condition which becomes disabling after l80 days of active duty will be sufficient evidence of service connection unless the officer withheld information which would have established the preexistence of the disabling condition. …
>
> To rebut a presumption of "service-incurred" or "service-aggravated," a preponderance of evidence to the contrary must be present. Medical opinions alone are not sufficient. There must be evidence based on well established medical principles which preclude a reasonable doubt.

Ex. A, Commissioned Corps Personnel Manual (CCPM) Pamphlet No. 47, "Disability Evaluation Manual for the Commissioned Corps of the U.S. Public Health Service," Ch. 2 § B (July 1999). The Disability Evaluation Manual, therefore, triggers a presumption that Dr. Myrick's disabling MS condition was incurred while on active duty unless she "withheld information which would have established the preexistence of the disabling condition" at the time she applied for her commission in 2004.[2] See id. In any event, the presumption may be rebutted by a "preponderance of evidence … based on well established medical principles which preclude a reasonable doubt." Id.

[2] An earlier PHS manual articulated the pertinent exception to the presumption of fitness in terms of "willfully withheld information." Commissioned Personnel Manual, part 2 § E(2)(b) (April 5, 1982), available at http://dcp.psc.gov/eccis/documents/CCPM23_8_6.pdf. As noted in our opening brief, however, the issue of whether Dr. Myrick acted "willfully" is not at issue.

The appeals board found that Dr. Myrick "did not disclose this serious [MS] condition or therapy, as is required, at the time of her application to the Corps" and "withheld information from the Corps which would have established the preexistence of the disabling condition." AR 51-52 (Dec. 6, 2007 MAB decision). As demonstrated in our opening brief, these findings are supported by substantial evidence in the administrative record. Hence, the presumption of fitness does not apply to Dr. Myrick's condition.

Even if presumption of fitness applied, however, the administrative record contains overwhelming medical evidence that affirmatively rebuts any such presumption. All of the medical evidence before the appeals board was consistent in reflecting that Dr. Myrick had MS, which was diagnosed in 2000 and was treated with drugs for several years before she applied for a PHS commission in 2004. AR 64-65 (Nov. 27, 2000 Medical Report with initial diagnosis of "dysarthria, most likely secondary to multiple sclerosis, based on symptoms and MRI findings."); AR 115 (Aug. 28, 2007 Ltr. from Dr. Uskavitch) ("Avonex … 30 mcg/wk" prescribed "since 01/01 → 8/07"). Dr. Myrick confirmed that she had received the MS diagnosis and drug treatment in her testimony before the appeals board. AR 23, AR 29, Tr. 23:15-18, Tr. 29:17-25 (Dec. 6, 2007 testimony of Dr. Myrick that she was diagnosed with MS in 2000, began taking Avonex "in 2000," and "remained on that therapy until last July [2006]."). The medical evidence before the appeals board conclusively proves the existence of her preexisting condition.

Dr. Myrick did express her disagreement with the MS diagnosis in her testimony before the appeals board. AR 22-23, AR 26, Tr. 22:22-23:14, 26:8-13. Dr. Myrick, however, is a dentist, not a neurologist, and she testified that she made no effort to educate herself about MS after her diagnosis. AR 23-24, Tr. 23:19-24:13. Dr. Myrick's assertion of "self-denial" (AR 34) does not create reasonable doubt about her well-documented, preexisting, medical condition.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in our opening brief, we respectfully request that the Court grant the United States judgment upon the administrative record, deny plaintiff's cross-motion, and deny plaintiff's requests for relief.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Lisa M. Flynn
Assistant Regional Counsel
Office of General Counsel, Region X
Department of Health and Human Services
2201 Sixth Avenue, Suite 902
Seattle, WA 98121-1833

August 7, 2008

CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2008, a copy of foregoing "DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick