# In the United States Court of Federal Claims

No. 08-92C
Filed: October 31, 2008
**TO BE PUBLISHED**

*****************************************

| | |
|---|---|
| | * Disability Evaluation Manual, |
| | * Commissioned Corps Personnel Manual |
| | * Pamphlet No. 47 (1999); |
| | * Judgment on the Administrative Record, |
| | * RCFC 52.1; |
| | * Regulars and Members on Active Duty for |
| SHARON L. MYRICK, DDS, | * More than 30 Days: Retirement, Section |
| | * 1201 of Title 10 of the United States |
| Plaintiff, | * Code, 10 U.S.C. § 1201, 1203; |
| | * Schedule of Ratings–Neurological Conditions |
| v. | * and Convulsive Disorders, Section 4.124a |
| | * of Title 38 of the Code of Federal |
| THE UNITED STATES, | * Regulations, 38 C.F.R. § 4.124a; |
| | * United States Constitution Amend. V, VI; |
| Defendant. | * United States Public Health Service |
| | * Congress Personnel Management |
| | * Regulations; |
| | * Rights, Benefits, Privileges, and Immunity for |
| | * Commissioned Officers or Beneficiaries, |
| | * Section 213A of Title 42 of the United |
| | * States Code, 42 U.S.C. § 213a, *et. seq.* |

*****************************************

**Wendell C. Robinson**, Law Offices of Wendell Robinson, Washington, D.C., for Plaintiff.

**Douglas G. Edelschick**, United States Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER.

**BRADEN,** *Judge*.

I.     RELEVANT FACTS.[1]

In October 2004, Plaintiff re-applied to serve as a Dental Officer with the Commissioned Corps of the United States Public Health Service ("PHS"), after serving two previous tours of duty from October 1985 to July 1988 and from November 1996 to October 1998. *See* Gov't Mot. S.J. AR at 1. As part of the re-application process, Plaintiff was required to submit a medical history report and undergo a medical examination to determine fitness for re-enlistment. *See* AR at 57. Plaintiff's medical history report indicated that she was "in good health" and had never experienced "meningitis, ancephalitis, or other neurological problems[.]" *Id.* at 53-54. Plaintiff's medical examination, administered by a PHS physician on October 16, 2004, was normal. *Id.* at 58. After a review of Plaintiff's medical history report and examination, she was certified by PHS as medically fit for duty. *Id.* at 57-60. In April 2005, Plaintiff resumed service as a PHS Dental Officer. *See* Am. Compl. ¶ 8.

In late October 2006, however, Plaintiff's health began to decline. *See* AR at 103. Plaintiff reported suffering from: numbness in her feet; loss of balance; "tingling fingers;" numbness in her right leg; blurred vision; knee pain; and loss of coordination. *Id.* at 153, 161. On March 26, 2007, Plaintiff provided the PHS with a letter from her physician, indicating the need for treatment of a "neurological condition" and recommending that Plaintiff take a fifteen-day leave of absence. *Id.* at 93. On May 10, 2007, Plaintiff provided the PHS with a second letter from her physician recommending a month-long leave of absence. *Id.* at 92. On May 30, 2007, Plaintiff requested retirement for a medical disability. *Id.* at 152. On July 30, 2007, Plaintiff provided PHS with a letter from her physician advising that she had developed multiple sclerosis ("MS"). *Id.* at 91.

Plaintiff's request for retirement was forwarded to a PHS Medical Review Board to determine her eligibility for retirement for a medical disability, pursuant to the PHS Commissioned Corps Personnel Manual, CCPM Regulation, Instruction 1, Subchapter CC-49.3. *See* AR at 62. The PHS Medical Review Board concurred that Plaintiff was unfit for duty, because of MS. *Id.* Contrary to her statement on the 2004 medical history report, however, Plaintiff was diagnosed with MS in November 2000, and since January 2001 had been taking the prescription drug AVONEX™[2] for treatment of MS. *Id.* at 64-65, 115. On September 27, 2007, the PHS Medical Review Board determined that Plaintiff should be separated from PHS, but without retirement medical disability benefits. *Id.* at 62. The PHS Review Board found that the onset of Plaintiff's MS occurred prior to

_____

[1] The relevant facts cited herein were derived from the June 11, 2008 Administrative Record ("AR"). In addition, other references are made to: the May 13, 2008 Amended Complaint ("Am. Compl."), and the Government's June 24, 2008 Motion for Summary Judgment Upon Administrative Record ("Gov't Mot. S.J. AR").

[2] "AVONEX™ " is a "trademark for a preparation of interferon beta-1a." Dorland's Illustrated Medical Dictionary 186 (31st ed. 2007). "Interferon beta-1a" is "a synthetic form of interferon-β produced by recombinant DNA techniques that acts as a biological response modifier; used in the treatment of relapsing forms of multiple sclerosis." *Id.* at 962.

resuming active duty in 2004, and this pre-existing condition was not disclosed at the time of re-application, as required. *Id.*

On November 8, 2007, Plaintiff filed an appeal of the PHS Medical Review Board's September 27, 2007 Decision with the PHS Full & Fair Hearing Appeals Board ("PHS Appeals Board"). *See* AR at 49. On December 6, 2007, the PHS Appeals Board conducted a hearing, during which Plaintiff admitted to "[knowing] that [she] had MS" when she submitted the 2004 medical history report and to taking AVONEX™ since 2001. *Id.* at 22, 29. Plaintiff was asked why she did not answer "yes" on the medical history report to the question: "[H]ave you ever had or do you now have meningitis, ancephalitis, or other neurological problems?" *Id.* at 22. Plaintiff answered that "she did not have any symptoms" and, at that time, "felt kind of like [her MS diagnosis] was really not true." *Id.* at 22, 23. The PHS Appeals Board affirmed the PHS Medical Review Board's recommendation that Plaintiff be separated from PHS, without medical disability benefits, because: "the onset of the condition of multiple sclerosis was prior to her call to active duty and she was receiving significant therapy prior to [re-]entering [PHS]." *Id.* at 51. Moreover, the PHS Appeals Board "unanimously agreed that she withheld information from the Corps which would have established the preexistence of the disabling condition." *Id.* Finally, the PHS Appeals Board concluded that "her service did not aggravate her pre-existing condition and the exacerbation that she was experiencing in 2007 was considered to be a natural progression or part of the natural history for her disease." *Id.*

On January 2, 2008, the Acting Surgeon General approved the PHS Appeals Board's decision and Plaintiff was discharged from the PHS, without medical disability benefits, effective January 9, 2008. *See* Am. Compl. ¶ 6.

## II.    PROCEDURAL HISTORY.

On February 14, 2008, Plaintiff filed a Complaint ("Compl.") in the United States Court of Federal Claims challenging the January 2, 2008 discharge decision. *See* Compl. ¶ 17. On May 13, 2008, Plaintiff filed an Amended Complaint alleging that the PHS ("the Government") violated 42 U.S.C. § 212, *et seq.*,[3] and 10 U.S.C. § 1201, *et seq.*, by denying Plaintiff medical disability retirement benefits. *See* Am. Compl. ¶¶ 15-17. The Amended Complaint also requests "an order reversing the [PHS] Medical Review Board and the [PHS] Appeals Board's findings" and a remand "with instructions to award [Plaintiff] medical disability." *Id* ¶ 17.

On June 11, 2008 the Administrative Record was filed. On June 24, 2008, the Government filed a Motion For Judgment Upon Administrative Record. On July 24, 2008, Plaintiff filed a Cross-

---

[3] The Amended Complaint repeatedly references 42 U.S.C. § 212. *See* Am. Compl. ¶ 16; *see also* Pl. Mot. S.J. AR at 5. Title 42, Section 212 of the United States Code, "Retirement Of Commission Officers," is not applicable to Plaintiff's claims. *See* 42 U.S.C. § 212. Plaintiff may have intended to reference 42 U.S.C. § 213a, that provides Commissioned Corps Officers the right to disability retirement under 10 U.S.C. § 1201. *See* 42 U.S.C. § 213a.

Motion For Judgment Upon Administrative Record and an Opposition To The Defendant's Motion For Judgment Upon Administrative Record ("Pl. Opp. Mot."). On August 7, 2008, the Government filed a Reply In Support Of The June 24, 2008 Motion For Judgment Upon The Administrative Record And Response To Plaintiff's July 24, 2008 Cross-Motion ("Gov't Opp. Mot.").

## III.   DISCUSSION.

### A.   Jurisdiction.

The Tucker Act authorizes the United States Court of Federal Claims with "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon [the Court of Claims] whenever the substantive right exists." *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States* v. *Testan*, 424 U.S. 392, 398 (1976)). To satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The parties may raise a challenge to the court's subject matter jurisdiction at any time, or, alternatively, the court may do so *sua sponte*. *See Folden* v. *United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

Section 1201 of Chapter 10 of the United States Code, "Regulars And Members On Active Duty For More Than 30 Days: Retirement," provides, in part, that "[u]pon a determination by the Secretary [of the relevant service branch] that [a member of a regular component of the armed forces] is unfit to perform the duties of the member's office . . . the Secretary may retire the member [with disability pay] computed under section 1401 of this title." 10 U.S.C. § 1201; *see also* 42 U.S.C § 213a (providing that commissioned officers of the PHS may be entitled to disability under 10 U.S.C. § 1201). When 10 U.S.C. § 1201 is invoked, there is "little difficulty establishing that [10 U.S.C.] § 1201 is understood as money-mandating." *Fisher,* 402 F.3d at 1174; *see also Sawyer* v. *United States*, 930 F.2d 1577, 1580-81 (Fed. Cir. 1991) (holding that claims challenging disability status, under 10 U.S.C. § 1201 are within the jurisdiction of the United States Court of Federal Claims). Accordingly, the court has jurisdiction to adjudicate the claims alleged in the May 13, 2008 Amended Complaint.

**B.      Standard For Judgment On The Administrative Record - RCFC 52.1.**

The standard of review for a motion for judgment on the administrative record, pursuant to RCFC 52.1, is similar but not identical to a motion for summary judgment under RCFC 56.  *See Bannum, Inc.* v. *United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005).  The standard for a motion for summary judgment is whether the moving party has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes judgment.  *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In contrast, the standard for a decision on a motion for judgment on the administrative record is more limited, *i.e.*, given all the disputed and undisputed facts, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law.  *See Bannum*, 404 F.3d at 1357 (instructing the court to make "factual findings under RCFC 56.1 from the [limited] record evidence as if it were conducting a trial on the record."); *see also* RCFC 52.1.  Any deficiency must be established by Plaintiff with "cogent and clearly convincing evidence," overcoming the strong presumption that the Government discharged their duties correctly, lawfully, and in good faith.  *Martinez* v. *United States*, 77 Fed. Cl. 318, 324 (2007) (citations omitted).

**C.      The Issues Presented In This Case.**

**1.      The Government's June 24, 2008 Motion For Judgment Upon Administrative Record.**

**a.      The Government's Arguments.**

The Government argues that Plaintiff is not entitled to medical disability retirement benefits under either 10 U.S.C. § 1201(a) or 10 U.S.C § 1203(a), because both statutes require that any disabling condition be incurred "while entitled to basic pay."[4]  *See* Gov't Mot. S.J. AR at 6-7.  Plaintiff was "diagnosed with MS [in 2000] and was receiving significant therapy for the condition prior to her re-enlistment." *Id.* at 7.  Moreover, Plaintiff's December 6, 2007 testimony established a 2000 diagnosis of MS and contemporaneous medical records "substantial[ly] evidence" the PHS Appeals Board decision.  *Id.*  The Government contends Plaintiff's admission alone is enough to dispose of the alleged claims for disability retirement benefits.  *Id.* at 8.

The Government also argues that the Plaintiff is equitably estopped from asserting a claim for disability.  *See* Gov't Mot. S.J. AR at 8-9.  The elements of "equitable estoppel are: (1)

---

[4] Section 1203(a) of Chapter 10 of the United States Code, "Regulars And Members On Active Duty For More Than 30 days: Separation", provides that: "[u]pon a determination by the Secretary [of the relevant service branch] that a [a member of a regular component of the armed forces] . . . is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . the member may be separated from the member's armed force, with severance pay." 10 U.S.C. § 1203(a).

misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." *Lincoln Logs, Ltd.* v. *Lincoln Pre-Cut Log Homes*, *Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992). Because MS "is a serious medical condition with a minimum 30% rating in the [Veteran Affairs Administration's] disability schedule,"[5] Plaintiff was required to disclose this diagnosis upon re-enlistment, but failed to do so. *See* Gov't Mot. S.J. AR. at 10. PHS relied on Plaintiff's misrepresentation in accepting her re-enlistment. *Id.*

### b.      The Plaintiff's Opposition.

Plaintiff responds that the Government's Motion For Judgment Upon Administrative Record merely "reiterates the Board's findings," and does not refute Plaintiff's testimony that she "believed her MS diagnosis was incorrect" and had no MS symptoms when she applied to re-enlist in the PHS in October 2004. *See* Pl. Opp. Mot. at 1-2.

### c.      The Court's Resolution.

Congress authorized service members to receive disability benefits, if they are found to be unable to perform the duties required by service. *See* 10 U.S.C. §§ 1201-1203. Section 1201(a), however, limits disability benefits to injuries that are "incurred while [the member is] entitled to basic pay." 10 U.S.C. § 1201(a); *see also* 10 U.S.C § 1201(c)(1) ("Eligible members . . . A member of a regular component of the armed forces entitled to basic pay."). In this case, the PHS Medical Review Board and the PHS Appeals Board concluded that the onset of Plaintiff's MS began prior to her resumption of active duty service in 2005. *See* AR at 51, 62. There is substantial evidence in the record to support these findings. On November 27, 2000, Plaintiff was diagnosed by Dr. Gary Duncan, M.D., as having "dysarthria, most likely secondary to multiple sclerosis, based on symptoms and MRI findings." *Id.* at 65; *see also id.* at 115. In January 2001, Plaintiff began taking AVONEX™. *Id.* at 66, 115. Moreover, in testimony before the PHS Appeals Board, Plaintiff acknowledged that in 2004, when she submitted her medical history report, the pre-existence of MS and prior receipt of medical treatment for this condition was not disclosed. *Id.* at 22, 29.

The Government's Motion For Judgment On The Administrative Record is, however, not dispositive, because Plaintiff also disputes the PHS Medical Review Board and PHS Appeals Board findings that Plaintiff's service *did not aggravate* Plaintiff's pre-existing condition. *See* Pl. Mot. S.J. AR at 2.

---

[5] Title 38, Section 4.124a of the Code of Federal Regulations, titled "Schedule of ratings--neurological conditions and convulsive disorders," states that multiple sclerosis has a minium disability rating of "30%." 38 C.F.R. § 4.124a (item 8018).

    **2.**        **Plaintiff's July 24, 2008 Cross-Motion For Judgment Upon Administrative Record.**

        **a.**        **Administrative Challenges.**

            **i.**        **The Plaintiff's Argument.**

Plaintiff disputes the determination by the PHS Medical Review Board and PHS Appeals Board that her MS was not aggravated by her active service. *See* Pl. Mot. S.J. AR at 2. Plaintiff argues that the Government failed to present any evidence refuting Plaintiff's testimony that she was entitled to medical disability retirement. *Id.* at 5. Therefore, both the Boards' decisions were arbitrary, capricious, or unsupported by substantial evidence. *Id.*

            **ii.**        **The Government's Response.**

The Government responds that the Plaintiff is not entitled to a presumption that her MS was service-aggravated, because the Disability Evaluation Manual ("DEM") for the PHS Commission Corps provides:

> To be eligible for disability benefits, an officer found unfit because of a physical disability must have acquired such disability while on active duty. The disability may be due to condition incurred on active duty or *due to a preexisting condition which was aggravated by service*. The presumption is made that an officer was physically fit at the time of his/her call to active duty and any condition incurred or aggravated subsequently is considered service connected with the following exceptions. . . . Abnormalities discovered subsequent to entry on active duty which impel the conclusion that they must have existed or have originated before the individual entered PHS. As a matter of policy, any condition which becomes disabling after 180 days of active duty will be sufficient evidence of service connection unless the officer *withheld information which would have established the preexistence of the disabling condition*.

Disability Evaluation Manual For The Commissioned Corps Of The U.S. Public Health Service, CCPM Pamphlet No. 47, 3 (July 1999) (Attached as Exhibit A to the Government's August 8, 2008 Reply) (emphasis added).

        Without the presumption of fitness, Plaintiff fails to present any substantial evidence that the PHS Boards' decisions were arbitrary, capricious, or unsupported by law. *See* Gov't Opp. Mot. at 6-7.

### iii.     The Court's Resolution.

The DEM provides that a "disability may be due to a condition incurred on active duty or *due to a preexisting condition which was aggravated by service.*" DEM at 3 (emphasis added).  Both PHS Boards determined that Plaintiff's service "did not aggravate her pre-existing condition and the exacerbation that she was experiencing in 2007 was considered to be a natural progression or part of the natural history for her disease." AR at 51, 62.  No testimony was taken regarding the issue of service-aggravation, and neither the PHS Medical Review Board nor the PHS Appeals Board cited any evidence in the record to support this conclusion.  *Id.*

According to the DEM, the "presumption is made that an officer was physically fit at the time of his/her call to active duty and any condition incurred or aggravated subsequently is considered service-connected." DEM at 3.  There are three exceptions to this general presumption, including: "[a]s a matter of policy, any condition which becomes disabling after 180 days of active duty will be sufficient evidence of service connection unless the officer *withheld information which would have established the preexistence of the disabling condition.*" *Id.* (emphasis added).

Under a Rule 52.1 motion for judgment on the administrative record, the court is tasked with making findings of fact "as if it where conducting a trial on the record." *Bannum*, 404 F.3d at 1357.  There is ample evidence in the Administrative Record to support the conclusion that Plaintiff withheld the preexistence of her MS when she re-enlisted in the PHS. *See* AR at 22, 29, 65, 115.  Because the court has determined that Plaintiff withheld the preexistence of her MS, she is not entitled to the presumption that her disabling condition was service-aggravated. *See* DEM at 3.  Before this court, Plaintiff bears the burden of showing that the Boards' decisions were arbitrary, capricious, or contrary to law. *See Bannum*, 404 F.3d at 1351 (holding that the court is to apply an "arbitrary and capricious standard" when reviewing administrative decisions).  Plaintiff is unable to meet this burden, because she is neither entitled to the statutory presumption of service-aggravation nor offers evidence, from the Administrative Record or in the form of a supplement to the Administrative Record, to support her claim of service-aggravation.  Although, the PHS Boards' conclusion that Plaintiff's condition was a natural progression of MS and was not exacerbated by her service was unsupported, that error was harmless. *See* AR at 51, 62.  Since she did not proffer any evidence of service-aggravation, neither Board was required to *sua sponte* refute an evidentiary case Plaintiff failed to make.

Because Plaintiff failed to meet her evidentiary burden, Plaintiff's July 23, 2008 Motion For Judgment Upon Administrative Record is denied.

### b.     The Constitutional Challenges.

### i.     The Plaintiff's Arguments.

Plaintiff's Motion For Judgment Upon Administrative Record also asserts an argument titled "Violation Of Due Process Rights And The Right To Confrontation." Pl. Mot. S.J. AR at 6.  The

substance of this argument is that the PHS Medical Review Board and the PHS Appeals Board failed to "consider[] evidence from individuals that were not present during the hearing, resulting in a denial of [Plaintiff's] right to confront and cross-examine her accusers." *Id*.

### ii.     The Government's Response.

The Government responds that neither the Fifth nor the Sixth Amendment to the United States Constitution require that a Plaintiff be allowed to confront all individuals who provided evidence in a civil trial. *See* Gov't Opp. Mot. at 3.

### iii.     The Court's Resolution.

#### a.     The Confrontation Clause Of The Sixth Amendment To The United States Constitution Is Not Applicable In This Case.

The Sixth Amendment to the United States Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.  The Confrontation Clause affords the accused the right in criminal cases to confront any adverse witnesses.  *See Delaware* v. *Van Arsdall*, 475 U.S. 673, 680 (1986) ("We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.") (internal quotations omitted).  Because Plaintiff is not subject to a criminal proceeding, the Sixth Amendment is inapplicable in this case.  *See Doe* v. *United States,* 66 Fed. Cl. 165, 176-77 **(**2005**)** (holing that the Confrontation Clause did not apply to hearings before a military Medical Evaluation Board, or the Air Force Board for the Correction of Military Records).

#### b.     The Due Process Clause Of The Fifth Amendment To The United State Constitution Was Not Violated In This Case.

To the extent that Plaintiff is asserting a similar argument under the Fifth Amendment Due Process Clause, the Plaintiff's argument is misplaced.  The Due Process Clause does not guarantee the Plaintiff an absolute right of cross-examination.  *See Doe*, 66 Fed. Cl. at 177 (holding that Plaintiff's counsel's inability to cross-examine a Psychiatric Resident during military administrative review proceedings did not violate the Fifth Amendment).

**IV.    CONCLUSION.**

For these reasons, Plaintiff's July 24, 2008 Cross-Motion For Judgment Upon Administrative Record is denied, thereby rendering the Government's July 24, 2008 Motion For Judgment Upon The Administrative Record dispositive, which the court now grants.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**